CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

JUL 15 2014

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

|  |  |
|---|---|
| ROY WALTER KRIEGER, | Civil No. 5:13cv00073 |
| *Plaintiff,* |  |
| v. | **REPORT** <br> **and RECOMENDATION** |
| LOUDOUN COUNTY, DEPT. OF SOCIAL SERVICES, *et al*, | By: Hon. James G. Welsh <br> U. S. Magistrate Judge |
| *Defendants* |  |

All non-dispositive pretrial motions in this case having been previously referred pursuant to 28 U.S.C. § 636(b)(1)(A) and all dispositive motions in this case having been referred pursuant to 28 U.S.C. § 636(b)(1)(B), this matter is now before the undersigned for submission of proposed findings of fact, conclusions of law, and a recommended disposition of all pending dispositive motions (docket #12).

### I. Procedural Background

Ostensibly pursuant to multiple state and federal statutes, in a "revised and amended complaint" (docket #36) the plaintiff, appearing *pro se*, alleges in eight counts deprivation of his right to register and vote in the elections held in Virginia in November 2012 and November 2013, denial of his entitlement to benefits under the Supplemental Nutrition Assistance Program ("SNAP"),[1] and unlawful discrimination. Therein, he names Loudoun County's Department of

---

[1] 7 U.S.C. §§ 2011 *et seq.*

Family Services ("Loudoun-DFS"), Virginia's Department of Social Services ("Virginia-DSS"), Warren County's Department of Social Services ("Warren-DSS"), and Jennifer Doyle ("Ms. Doyle") as defendants. In addition to seeking injunctive and declaratory relief related to his SNAP benefits claim, the plaintiff also seeks compensatory damages in the amount of Five Hundred Thousand Dollars.

On varying bases, the defendants have all moved to dismiss the plaintiff's complaint and submitted supporting memoranda of points and authorities. Virginia-DSS seeks dismissal pursuant to Rules 12(b)(1) on grounds that it enjoys Eleventh Amendment immunity and dismissal pursuant to Rule 12(b)(6) on grounds that the plaintiff's complaint fails to plead a cognizable claim against this state agency (docket ## 32 and 43). Loudoun-DFS seeks dismissal pursuant to Rule 12(b)(6) on grounds that the complaint fails to demonstrate its violation of a constitutionally protected right, a failure to plead exhaustion of administrative remedies, applicability of the *Younger* abstention doctrine, and a failure to allege any other cognizable cause of action (docket ##45 and 46). Warren-DSS similarly seeks dismissal on grounds that the complaint fails to demonstrate its violation of a constitutionally protected right, the plaintiff's failure to plead exhaustion of his administrative remedies, his failure to allege any other cognizable cause of action, and the applicability of *Younger* (docket ##56 and 57). Ms. Doyle (a Loudoun-DFS, Benefit Program Specialist and the only individually-named defendant) seeks dismissal on the grounds of her entitlement to qualified immunity, a failure to alleged facts sufficient to give rise to a cognizable personal liability claim, and on grounds that the complaint, to the extent it may assert a claim against her, is "truly against [Loudoun] County" (docket ## 45 and 46).

In the plaintiff's "response in opposition" (docket #62), he challenges the timeliness of Warren-DSS's filing, and in his accompanying memorandum (docket #63) he argues that the court has subject matter jurisdiction because he has alleged violations of an agglomeration of federal statutes. *Inter alia,* he cites the court to several federal and state statutes, which he alleges protect his rights to vote, his right to SNAP benefits, his right to be free from disability-based discrimination and which, he further argues, create a private right of action to vindicate those rights (*Id.*). In his memorandum, the plaintiff also argues he has adequately pleaded cognizable causes of action against each of the defendants on the basis of his entitlement to the benefit of a motley assortment of legal doctrines and principles,[2] and responding specifically to Ms. Doyle's plea of qualified immunity, the plaintiff also argues that the doctrine of qualified immunity is inapposite.

In response to the plaintiff's somewhat prolix memorandum in opposition to their motions to dismiss, Loudoun-DFS, Warren-DSS and Ms. Doyle filed a joint written reply brief (docket #65). Therein, Ms. Doyle highlights the basis for her contention that the plaintiff's complaint against her should be dismissed for the failure of the complaint to allege a claim against her individually and that Loudoun County was the true party in interest. In the same reply, both Loudoun-DFS and Warren-DSS restate their reliance on the *Younger* abstention doctrine, on the plaintiff's failure to identify an enforceable right under § 1983, and their reliance on the plaintiff's failure to exhaust his state law-based administrative remedies. To document the non-final nature of the plaintiff's state administrative proceedings and the plaintiff's failure to exhaust his administrative remedies, a copy of a February 6, 2014 Virginia-DSS decision (docket

---

[2] These include: "[administrative] futility," estoppel *in pais*, *res judicata* and collateral estoppel, *respondeat superior* and vicarious liability, and negligence *per se* (docket #63).

3

#65-1) was submitted along with the joint reply brief.[3] The separate reply of Virginia-DSS (docket #66) focuses on the Commonwealth's Eleventh Amendment immunity and the plaintiff's unsubstantiated assertion that it is somehow vicariously liable or otherwise legally responsible for the acts and omissions of political subdivisions.

On March 27, 2014 the views of the parities were heard (docket #68), and pursuant to leave granted, the *pro se* plaintiff was permitted to file in writing the basis for his contention that the *Younger* doctrine of abstention is not applicable in the instant case and to provide the court with a list of the statutory bases upon which he relies to support his claims against the defendants (*Id.* at 90; docket #69).

## II,     Recommended Disposition

After a careful and mature consideration of the entire record and after having heard the views of the parties, and for the reasons that follow, it is **RECOMMENDED** that summary judgment be **GRANTED** in favor of all defendants, and that this case be **DISMISSED WITH PREJUDICE WITHOUT LEAVE FURTHER TO AMEND** and that it be **STRICKEN** from the court's active docket.

## III.    Standard of Review

### A. Rule 12(b)(1) and Rule 12(b)(6)

Implicating different standards of review, the arguments the defendants raise in their motions to dismiss include lack of subject matter jurisdiction and failure to state a claim. A failure by the plaintiff to exhaust administrative remedies, for example, is governed by Rule

---

[3] As documented in the twenty-one page decision, this matter was heard on the plaintiff's administrative appeal request following the Loudoun-DFS denial of his application for SNAP benefits from 09/23/2012 through 10/18/2012, this local agency's purported failure to process his appeal of that determination, and its failure to register his to vote (docket #65-1 at 2). Along with the written decision, which was in essence fully favorable to Loudoun-DFS, the plaintiff was therein notified in writing of his further administrative appeal rights (*Id.* at pp 20-21).

12(b)(1), and it must be decided "first, because [it] concern[s] the court's very power to hear the case." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (internal quotation marks omitted); *see Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300-301 (4th Cir. 2009). In addition, under Rule 12(b)(1) the plaintiff bears the burden of proving that subject matter jurisdiction properly exists, *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999); the court "[is permitted to] consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case, *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); and the court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

In contrast, a motion to dismiss under Rule 12(b)(6) is designed to test the sufficiency of the plaintiff's complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). This standard requires a complaint only to satisfy Rule 8(a)(2), a standard which entails only a "short and plain statement of the claim showing that the pleader is entitled to relief." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). It must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted), but all well-pleaded allegations must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994). All factual allegations must be construed in the light most favorable to the plaintiff, *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)), but unsupported legal conclusions, legal conclusions couched as factual allegations, and conclusory factual allegations devoid of any reference to actual events do not need to be accepted by the court, *Iqbal*, 556 U.S. at 678;

5

*Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989); *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### B. Special Consideration for *Pro Se* Litigants

*Pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *accord Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 724 (4th Cir. 2010). Such complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980). Nevertheless, *pro se* complaints must be dismissed if they do not allege "a plausible claim for relief." *Forquer v. Schlee*, 2012 U.S. Dist. LEXIS 172330, *7 (D. Md. Dec. 4, 2012) (citations and internal quotation marks omitted). Therefore, "[w]hile *pro se* complaints may represent the work of an untutored hand requiring special judicial solicitude, a district court is not required to recognize obscure or extravagant claims defying the most concerted efforts to unravel them." *Weller v. Dep't of Soc. Servs. for the City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990) (citation omitted).

### IV. Plaintiff's Claim

In his "Revised Amended Complaint,"[4] the plaintiff alleges that he is "medically disabled" and "eligible" for Supplemental Security Income ("SSI"), Medicaid and SNAP benefits (docket #36, ¶¶ 3-4). He asserts that through a website "operated" by Virginia-DSS he applied for SNAP benefits and indicated his desire to be registered to vote (*Id.*, ¶ 4). According to his complaint, the plaintiff was later interviewed telephonically by Ms. Doyle in her capacity as a case worker for Loudoun-DFS and was told at that time his voter registration would be

---

[4] Hereinafter the "complaint"; it is the third iteration of the plaintiff's statement of his cause of action. *See* docket ## 3, 30 and 36.

processed and mailed to him (*Id.*). This representation, he contends, created an "assumed duty to protect one of [his] most fundamental rights" and caused him to "ma[ke] no further" voter registration effort (*Id.*).

The plaintiff states that an October 23, 2012 letter notified him that his SNAP application had been approved effective October 18, 2012 (*Id.*, ¶ 5). The plaintiff claims the effective date of this approval caused him to be "wrongfully" denied these benefits for the period between September 13 and October 12, 2012 (*Id.*). Contending that this denial was based on a "false pretext," the plaintiff administratively appealed, but his appeal was "ignored" by the "defendants" until he filed suit in federal court in July 2013 (*Id.*).

The plaintiff next alleges he sent multiple e-mails to Ms. Doyle shortly before the November 2012 election requesting documentation of his voter registration,[5] but he received no reply and later determined that he had not been registered to vote in that election (*Id.* ¶ 6) Without any suggestion of any follow-up or other action on his part to effect his voter registration over the course of the ensuing year, the plaintiff alleges he was informed by election officials he remained unregistered but was allowed (once again) to vote by provisional ballot (*Id.* ¶¶ 7, 13).

The plaintiff alleges that, after moving to Warren County at the end of February 2013, Loudoun-DFS wrongfully terminated his SNAP benefits, given his ongoing disability, effective March 31, 2013 following his unsuccessful administrative appeal (Id. ¶¶ 8-9, 12). He also alleges that Loudoun-DFS also wrongfully undertook an effort to collect $1,578.00 in interim SNAP benefits paid during the pendency of his unsuccessful appeal (*Id.* ¶¶ 9-11). Additionally, in his

---

[5] *But see* Va. Code Ann. § 24.2-416 (1950, as amended) ("Beginning January 1, 2010, the registration records shall be closed during the 21 days before a primary or general election.").

only direct factual reference to Warren-DSS, the plaintiff asserts that at some point following his move to Warren County "his case" was transferred to Warren-DSS (*Id.* ¶ 12).

Asserting a "duty [on the part of Virginia-DSS] to supervise, administer, monitor and assess the activities and performance" of Loudoun-DFS, Warren-DSS and Ms. Doyle, the plaintiff further pleads that the "defendants ... wilful[ly], wanton[ly] and reckless[ly] disregard[ed] [his] rights" and "conspired ... among themselves to do so" (*Id.* ¶¶ 14-15).

V.     Analysis

Invoking federal question jurisdiction under 28 U.S.C. § 1331,[6] the plaintiff argues he has a private right of action under a surfeit of federal statutes. In particular, he contends he has standing under various sections of the Food Stamp Reauthorization Act (7 U.S.C. §§ 2011 *et seq.*), the Rehabilitation Act (29 U.S.C. §§ 794 *et seq*), the Voting Rights Act (42 U.S.C. § 1973), the Americans with Disabilities Act ("ADA") (42 U.S.C. §§ 12101 *et seq* ) and several voter registration provisions in Virginia's election laws (Title 24.2 Va. Code Ann. (1950 as amended)).[7] For the reasons hereinafter outlined, this reliance is either misplaced or the defendants' motions are well-founded.

*A. Section 1983*

Although the plaintiff alleges this court has jurisdiction under 42 U.S.C. § 1983, it contains no abrogation of Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 341

---

[6] Pursuant to the Judiciary Act of Mar. 3, 1875, as currently codified, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331; *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 807-808 (1986).

[7] Pendent jurisdiction is a doctrine of discretion; "its justification lies in considerations of judicial economy, convenience, and fairness to litigants, [and] if these are not present a federal court should hesitate to exercise jurisdiction over state claims." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), Generally, where "the federal claims are dismissed before trial ... the state claims should be dismissed as well." *Id.* In accordance with this principle, the court should decline to exercise pendent jurisdiction over any state law claims asserted by the plaintiff in his *pro se* complaint.

(1979). In addition, as a state agency Virginia-DSS is not a "person" subject to suit within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). The plaintiff's assertion of federal court jurisdiction under the Food Stamp Reauthorization Act (7 U.S.C. §§ 2011 *et seq.*) equally lacks any abrogation of Eleventh Amendment immunity. *See Cronen v. Texas Dep't of Human Servs.*, 977 F.2d 934, 938 (5th Cir. 1992) (finding "no merit in th[e] argument" that the Food Stamp Act itself abrogates a states' Eleventh Amendment immunity).

### B. Eleventh Amendment's Waiver Standard

Virginia-DSS's argument is that the Eleventh Amendment bars the plaintiff's claims against it.[8] On review this defense is manifestly well-founded. Facially, the Eleventh Amendment applies in this case, and where there has been no waiver or valid abrogation, the court lacks subject-matter jurisdiction.

A non-consenting state is simply "immune from suits brought in federal courts by [its] own citizens." *Kimel v. Florida Bd. Of Regents*, 528 U.S. 62, 73 (1999); *see also Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that non-consenting States may not be sued by private individuals in federal court."); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). This protection also extends to state agencies, *see Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997), and it is available to a non-consenting state or state agency irrespective of its participation in a program through which the federal government provides assistance for the operation by the state. *Edelman*, 415 U.S at 671-672.

Absent, therefore, the necessary limitation by Congress' enactment of enforcement provisions pursuant to Section 5 of the Fourteenth Amendment, *see Fitzpatrick v. Bitzer*, 427

---

[8] The Eleventh Amendment provides that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State."

U.S. 445, 456 (1976), or a waiver of sovereign immunity by the Commonwealth of Virginia, the plaintiff in the case now before the court can seek neither injunctive nor monetary relief against Virginia-DSS. *See Garrett*, 531 U.S. at 363-364; *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("[I]n the absence of consent a suit in which [a state] or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment," and "[t]his jurisdictional bar applies regardless of the nature of the relief sought.") (citations omitted).

When there is an abrogation by Congress, such abrogation must be both unequivocal and "pursuant to a valid grant of constitutional authority." *Kimel*, 528 U.S. at 73. In deciding whether a state has waived its constitutional protection under the Eleventh Amendment, the courts will find waiver only where it is stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Faust v. South Carolina State Highway Dep't*, 721 F.2d 934, 941 (4th Cir. 1983) (quoting *Edelman*, 415 U.S. at 673, and *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)).

### *C. Rehabilitation, Americans with Disabilities Act, and "Motor Voter" Acts*

In his various submissions to the court, the plaintiff has identified, among others, his reliance on several federal labor law provisions in the Rehabilitation Act (29 U.S.C. §§ 791 *et seq.*),[9] the parallel provisions in the Americans with Disabilities Act (42 U.S.C. §§ 12101 *et seq.*),[10] and the National Voter Registration Act (42 U.S.C. §§ 973gg *et seq.*) as jurisdictional bases for his claims. In each instance, the plaintiff's reliance is misplaced. None of the specific

---

[9] 29 U.S.C. § 791 (addressing non-discrimination in employment of individuals with disabilities by federal agencies) and § 793 (addressing the with regard to federal contractors and subcontractors).

[10] *See Rogers v. Dep't of Health & Envtl. Control*, 174 F.3d 431, 433-434 (4th Cir. 1999) ("The ADA and Rehabilitation Act generally are construed to impose the same requirements due to the similarity of the language of the two acts.").

10

statutory references on which the plaintiff relies as a jurisdictional basis for his SNAP and voter claims contain the required Eleventh Amendment abrogation. Thus, the court does not need to reach the question of whether any of these statutes have any perceivable bearing on the alleged denial of his entitlement to supplemental nutrition benefits or his request to be registered to vote less than twenty-one days before the November 2012 election when the voter rolls were closed.[11]

As an exception, however, section 504 of the Rehabilitation Act (29 U.S.C. § 794)[12] and the parallel ADA Title II provision[13] abrogate Eleventh Amendment immunity and forbid disability discrimination in the provision of public services, but the plaintiff's reliance on these statutory provisions is also misplaced. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 484 and 491 (4th Cir. 2005). A plaintiff's assertion that he is making a claim under some provision of federal law is not enough to invoke the court's subject matter jurisdiction. "[T]he activities that support the jurisdictional claim must coincide with those that form the basis of the plaintiff's substantive claim." *Virginia Beach v. Roanoke River Basin Assn.*, 776 F.2d 484, 487 (4th Cir. 1995).

Therefore, in order for the plaintiff to bring a cause of action under Section 504 of the Rehabilitation Act or under Title II of the ADA, he must plead facts which would support such a claim. *See e.g., Iqbal*, 556 U.S. 662; *Twombly*, 550 U.S. 544. In the instant case that means the

---

[11] *See* Va. Code Ann., *supra* note 5.

[12] Section 504 of the Rehabilitation Act states: "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of h[is] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a). "To prevail, [a plaintiff] must make the same case as for [Americans with Disabilities Act] claim, except []he must show that []he was denied [participation or benefit] 'solely' because of h[is] disability rather than 'by reason of' it." *Sjöstrand v. Ohio State Univ.*, 750 F.3d 596, 602 (2014) (citing *Burns v. City of Columbus, Dept. of Public Safety, Div. of Police*, 91 F.3d 836, 840 (6th Cir. 1996)).

[13] "Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.' 42 U.S.C. § 12132. Compare with § 504 of the Rehabilitation Act, *supra* note 7 (requiring a higher burden of proof for plaintiffs alleging discrimination than Title II of the ADA).

11

plaintiff must plead allegations establishing a factually plausible claim that he was denied benefits or services "by reason of [his] disability." 42 U.S.C. § 12132; *see also Iqbal*, 556 U.S. at 679; *Constantine*, 411 F.3d at 498.

> [A] plaintiff seeking recovery for violation of either statute must allege that (1) []he has a disability, (2) []he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) []he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of h[is] disability.

*Constantine*, 411 F.3d at 498 (citing *Baird v. Rose*, 192 F.3d 462, 467-470 (4th Cir. 1999) and *Doe v. University of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264-1265 and n. 9 (4th Cir. 1995).

Using the rubric specific to each statute, the plaintiff's complaint fails totally to plead any facts from which it may be plausibly suggested that his disability "played a motivating role" (*see* Title II of the ADA) in any adverse action about which he complains or alternatively to plead any facts from which it may be plausibly suggested that discriminatory conduct by any defendant was "solely by reason" of the plaintiff's disability (*see* § 504 of the Rehabilitation Act). *See Baird*, 192 F.3d at 469. In short, the plaintiff has failed to plead any actionable discriminatory conduct on the part of the defendants --- or any one or more of them.

### D. Voting Rights Act

Pertinent to his claim that the defendants denial of his right to vote, the plaintiff pleads subject matter jurisdiction under the Voting Rights Act (42 U.S.C. § 1973), and several voter registration provisions in Virginia's election laws (Title 24.2 Va. Code Ann. (1950, as amended)). On review, none of these statutory provisions provide the requisite subject matter jurisdiction in the instant case.

Section 2 of the Voting Rights Act prohibits any "qualification or prerequisite to voting or standard, practice, or procedure ... which results in a denial or abridgement of the right of any

citizen of the United States to vote on account of race or color" or membership in a language minority group. 42 U.S.C.A. § 1973(a); *See Shelby County v. Holder*, 570 U.S. ___, 133 S. Ct. 2612, 2619 (2013). "The Voting Rights Act, Section 2 was enacted [in 1965] to forbid, in all 50 States, any 'standard, practice, or procedure ... imposed or applied ... to deny or abridge the right of any citizen of the United States to vote on account of race or color.'" *Id.*

Assuming *arguendo* the plaintiff is an aggrieved person seeking to enforce his right to vote, he nevertheless fails even minimally to allege the imposition of any voting standard, practice or procedure by Virginia-DSS or any other defendant "in a manner which resulted in a denial or abridgement of the right to vote on account of race." *White-Battle v. Moss*, 222 F. App'x. 304, 305 (4th Cir. 2007) (citing 42 U.S.C. § 1973(a)).

### E. ADA, Title II

Similarly, the plaintiff's complaint fails to allege any facially plausible violation of his rights under Title II of the Americans with Disabilities Act ("ADA") (42 U.S.C. §§ 12131 *et seq*)[14] or the Rehabilitation Act (29 U.S.C. §§ 794 *et seq*).[15] To state a claim for violation of Title II of the ADA, a plaintiff must allege facts sufficient "to support three elements: (1) that he is a qualified individual with a disability, (2) who was denied a public benefit by a state or local

---

[14] As outlined in 42 U.S.C. § 12101(b), when the ADA's purposes "are considered in the context of the ADA's entire statutory scheme, it may be concluded that the ADA is intended to provide a level playing field for persons with disabilities—present, past, or perceived—in the three areas subject to the statute: *employment* (Title I), *public services* (Title II), and *public accommodations and services operated by private entities* (Title III)." *CC Recovery, Inc. v. Cecil County*, 2014 U.S. Dist. LEXIS 82659, *10-11 (D. Md. June 18, 2014) (emphasis added). Within Title II, the ADA provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In addition, Title II specifically provides that it may be enforced by "any person alleging discrimination on the basis of disability in violation of section 12132 of this title." 42 U.S.C. § 12133.

[15] "Claims under Title II of the ADA and [§ 504 of] the Rehabilitation Act can be combined for analytical purposes because the analysis is 'substantially the same.'" *Innes v. Bd. of Regents of the Univ. Sys. of Md.*, 2014 U.S. Dist. LEXIS 89725, *26 (DMd. July 1, 2014) (citing *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 n.9 (4th Cir. 1995); *Rogers*, 174 F.3d at 433-34 (stating that courts may apply Rehabilitation Act precedent in interpreting the ADA, and vice versa)).

13

entity, and (3) that [his] disability was *a motivating cause for the intentional discrimination* or denial of benefit." *Tyner v. Brunswick County Dep't of Soc. Servs.*, 776 F. Supp. 2d 133, 149 (E.D.N.C. 2011) citations omitted) (emphasis added). A plaintiff seeking relief under § 504 of the Rehabilitation Act "must prove that the defendants' *discriminatory conduct was solely by reason* of the plaintiff's disability." *Constantine*, 411 F.3d at 498 n. 17 (citations and internal quotations omitted) (emphasis added). Consideration of the defendants' Rule 12(b)(6) motions, however, does not turn on the issue of causation, and the plaintiff's ADA and Rehabilitation Act claims, therefore, can be considered together.

After accepting all of the plaintiff's well-pleaded allegations in the complaint as true, it appears certain that the plaintiff cannot prove any set of facts that is plausible on its face to support either his discrimination claim or his entitlement to relief. At its core, the central issue presented by the plaintiff in his complaint is whether the failure to effect his voter registration could be viewed as an exclusion because of his disability. In other words, did the failure to effect his voter registration amount to state action against him that could equate to discrimination on the basis of his disability?

After reading his complaint liberally and giving special care to determine whether any possible set of facts would entitle the plaintiff to relief, one is compelled to conclude that the plaintiff cannot meet the third prong of the Section 504/Title II analysis.

### F. Failure to Exhaust Administrative Remedies

In his complaint, the plaintiff alleges he was "wrongfully den[ied]" SNAP benefits between September 13 and October 18, 2012, that he filed a timely appeal of this denial, that his appeal was "ignored," and that he is entitled to these benefits "by default" (docket #36, ¶ 5). In response, Loudoun-DFS, Warren-DSS and Ms. Doyle have each, inter alia, moved to dismiss on

14

the basis of the plaintiff's failure to exhaust his administrative remedies (docket #46 at 2-3, #56 at 1).

Administration of SNAP benefits is governed by the Virginia Supplemental Nutritional Assistance Program Manual ("SNAP Manual"), which is modeled after the federal regulations contained in 7 CFR ch. II, subch. C, pt. 271 *et seq.* Both Part XIX of the SNAP Manual and 7 CFR § 273.15 provide fair hearing and administrative appeal procedures, whereby a benefit applicant or recipient may appeal a local agency decision, obtain an administrative hearing and written decision of appeal, obtain an appeal of the hearing decision to the Commissioner for final agency action, and file for judicial review under the Administrative Process Act (Va. Code Ann. § 2.2-4000 (1950, as amended)).

Although the plaintiff initiated the appeal procedure after Loudoun-DFS denied his application for SNAP benefits between September 13 and October 18, 2012 and received an adverse decision, dated February 14, 2014 (docket #65-1), the plaintiff, claiming administrative "futility," knowingly declined to pursue further administrative remedies. Though "the general rule" is that "parties [must] exhaust prescribed administrative remedies before seeking relief from the federal courts," *McCarthy v. Madigan*, 503 U.S. 140, 144-145 (1992), when Congress does not explicitly legislate an exhaustion requirement, a federal court must use "sound judicial discretion to 'balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion,'" *Central Tel. Co. v. Sprint Communications Co of Va.*, 715 F.3d 501, 514 (2013) (quoting *Cavalier Telephone, LLC v. Va. Elec. & Power Co.*, 303 F.3d 316 (2002)). In the instant case, the relevant federal statutes do not require exhaustion, and thus this court must determine whether requiring exhaustion

15

would "serve[] the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy*, 503 U.S. at 145.

Consistent with *McCarthy*, the disputed issues in this case are neither likely to be resolved through further administrative proceedings nor unfit for resolution in a federal court. Furthermore, requiring exhaustion would in fact disserve judicial efficiency since a remand would neither assist in consolidating issues for appeal nor "produce a useful record for subsequent judicial consideration." *Id.* Exhaustion, therefore, should not be required in this case, and the plaintiff's claims need not be dismissed for this reason. Moreover, even if exhaustion were required, the plaintiff's *pro se* status would justify the findings that he has adequately demonstrated an exhaustion defense and that his cause of action is not procedurally defective. *See id.* at 146.

### G. Younger *Abstention*

The *Younger* doctrine holds that the federal courts should abstain from interfering in a state proceeding, even though it has jurisdiction to reach the merits, if there is (1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding, that (2) implicates important, substantial, or vital state interests and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit. *Younger v. Harris*, 401 U.S. 37, 41-54 (1971); *Moore v. City of Ashville*, 396 F.3d 390 (4th Cir. 2005) (citations omitted).

In the instant case, since the plaintiff is not seeking administrative review by the Virginia-DSS Commissioner, the plaintiff's claim fails to meet these criteria, and abstention under *Younger* is not appropriate.

### H. *Personal Capacity Liability*

16

To state a cognizable claim against Ms. Doyle in her individual capacity, the plaintiff must affirmatively shown that "[she] acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *see Victors v. Kronmiller*, 553 F. Supp. 2d 533, 545 (D. Md. 2008). Relevant to the plaintiff's claim against Ms. Doyle, the plaintiff's allegations are either bare assertions or alleged actions and inactions (docket #36, ¶¶ 5-6), taken in her official capacity as a Loudoun-DFS employee during a time when the voter rolls were closed under Virginia law in 2012. Since a suit against a person in her official capacity is actually a suit against the entity for whom she works, *see Brandon v. Holt*, 469 U.S. 464, 471-472 (1985), and since Loudoun-DFS is a named defendant, Ms. Doyle should be dismissed as an unnecessary party. *See Brissett v. Paul*, 141 F.3d 1157, at *1 [published in full-text format at 1998 U.S. App. LEXIS 6824] (4th Cir. 1998) ("[Naming] the local governments that employed [the officials] and naming the local officials in their official capacities was, therefore, redundant and unnecessary.").

### VI. Proposed Findings of Fact

1. Virginia-DSS is a state agency;

2. Loudoun-DFS is a local government social services agency;

3. Warren-DSS is a local government social services agency;

4. Jenifer Doyle is a social services representative employed by Loudoun-DFS;

5. In compliance with Rule 12(d), all parties were given a reasonable opportunity to present all the material is pertinent to the motion to dismiss;

6. Special care was afforded to consideration of the plaintiff's *pro se* complaint and all amendments in making the determination as to whether any possible set of facts would entitle the plaintiff to relief;

7. The plaintiff's complaint (docket #36) does not allege a cognizable claim for relief against any defendant;

8. The complaint should be dismissed with prejudice, because the plaintiff has had ample opportunity to plead and re-plead his claim, and no further amendment is either warranted or can cure the deficiencies in the claims against the defendants, or any of them;

9. The complaint alleges no cognizable wrongdoing on the part of Ms. Doyle in her individual capacity;

10. Ms. Doyle's designation as a defendant, therefore, is deemed to be in her official capacity as an employee of Loudoun-DFS;

11. Since a suit against her in her official capacity is actually a suit against Loudoun-DFS and since Loudoun-DFS is a named defendant, Ms. Doyle is an unnecessary party and she should be dismissed as a party-defendant;

12. Claiming administrative futility, the plaintiff elected not to initiate or pursue further administrative appeal to the Virginia-DSS Commissioner and as a consequence he has *de facto* exhausted his administrative remedies;

13. As there is no ongoing state judicial proceeding, *Younger* abstention is inapplicable;

14. Section 1983 contains no abrogation of Eleventh Amendment immunity;

15. Counts I and IV of the complaint fail to plead the cognizable violation under § 1983;

16. Relevant to the plaintiff's claims of entitlement to supplemental nutrition benefits and his request to be registered to vote, there has been no valid abrogation of the Commonwealth's Eleventh Amendment immunity, under 29 U.S.C. §§ 791 *et seq*, 42 U.S.C. §§ 12101 *et seq.* and 42 U.S.C. §§ 973gg *et seq.*, and the court lacks subject-matter jurisdiction over these claims;

17. Section 504 of the Rehabilitation Act (29 U.S.C. § 794) and ADA Title II each contain a valid waiver of Eleventh Amendment immunity;

18. The plaintiff's complaint fails to allege any facts from which it might be plausibly inferred that his disability was a motivating cause for any intentional discrimination or denial of benefit in violation of his rights under ADA Title II or to allege any facts from which it might be plausibly inferred that any allegedly discriminatory conduct was solely by reason of the plaintiff's disability in violation of § 504 of the Rehabilitation Act;

18

19. The plaintiff's complaint fails even minimally to allege the imposition of any voting standard, practice or procedure by Virginia-DSS or any other defendant "in a manner which resulted in a denial or abridgement of the right to vote on account of race" in violation of § 2 of the Voting Rights Act;

20. Along with the dismissal of the plaintiff's federal claims, any state law claims should be dismissed as well. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); and

21. All claims expressly pleaded by the plaintiff should be dismissed with prejudice.

## V. Directions to Clerk

The clerk is directed to transmit the record in this case immediately to the presiding district judge and to transmit a copy of this Report and Recommendation to the *pro se* plaintiff and all counsel of record.

## VI. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

**DATED:** This 14th day of July 2014.

/s/ *James G. Welsh*
United States Magistrate Judge