# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# HARRISONBURG DIVISION

| | | |
|---|---|---|
| ROY W. KRIEGER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:13cv073 |
| | ) | |
| v. | ) | |
| | ) | |
| LOUDON COUNTY, DEPARTMENT | ) | |
| OF SOCIAL SERVICES, et al., | ) | By: Michael F. Urbanski |
| | ) | United States District Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on defendants' motions to dismiss plaintiff's revised amended complaint for failure to state a claim and lack of subject matter jurisdiction, Dkt. Nos. 42, 45, and 56. The court referred the matter to the Honorable James G. Welsh, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) for proposed findings of fact and a recommended disposition. On July 15, 2014, the magistrate judge issued a report recommending that summary judgment be granted in favor of all the defendants and the case be dismissed with prejudice and stricken from the court's active docket. Dkt. No. 72. The plaintiff, Roy W. Krieger ("Krieger"), timely filed an objection to the Report and Recommendation, and defendants filed responses to Krieger's objection.

The court has reviewed the Report and Recommendation, plaintiff's objections thereto, and the defendants' responses. For the reasons set forth below, the Report and Recommendation is adopted in part and rejected in part, each of the motions to dismiss are granted, and the case will be dismissed with prejudice.

I.

In this case, Krieger, appearing pro se,[1] alleges the defendants, Loudon County Department of Family Services ("Loudon DFS"), Virginia's Department of Social Services ("VA DSS"), Warren County Department of Social Services ("Warren DSS"), and Jennifer Doyle ("Doyle"), deprived him of his right to register and vote in two elections held in Virginia, denied him Supplemental Nutrition Assistance Program ("SNAP") benefits, and discriminated against him. Krieger argues this court has jurisdiction pursuant to 28 U.S.C. § 1331 because several of his claims arise under various federal statutes including the Food Stamp Reauthorization Act, 7 U.S.C. § 2011, the Americans with Disabilities Act, 42 U.S.C. § 12101, the Rehabilitation Act, 29 U.S.C. § 794, the Voting Rights Act, 52 U.S.C. § 10301, the Voting Accessibility for the Elderly and Handicapped Act, 52 U.S.C. § 20101, and the National Voter Registration Act, 52 U.S.C. § 20501.[2] Krieger also asserts the defendants violated Virginia's election laws and alleges other state law claims.

II.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir.), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's

---

[1] Although pro se, plaintiff states that he was an "experienced attorney in the areas of aviation/aerospace and national security law." Pl.'s Obj. Report and Recommendation, Dkt. No. 73, at 2 n.3.
[2] The Voting Rights Act, the Voting Accessibility for the Elderly and Handicapped Act, and the National Voter Registration Act were formerly codified as 42 U.S.C. §§ 1973, 1973ee and 1973gg, respectively.

2

> proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir.), cert. denied, 131 S. Ct. 610 (2010); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only '*those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*.'"). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed").

3

Additionally, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of [his] entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates his previously-raised arguments will not be given "the second bite at the apple []he seeks;" instead, his re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id

### III.

Part V. of the Report and Recommendation, entitled Analysis, is divided into eight substantive sections as follows: A. Section 1983; B. Eleventh Amendment Waiver Standard; C. Rehabilitation, Americans with Disabilities, and "Motor Voter" Acts; D. Voting Rights Act; E. ADA, Title II; F. Failure to Exhaust Administrative Remedies; G. Younger Abstention; and H. Personal Capacity Liability. In his Response and Objections to the Report and Recommendation, Dkt. No. 73, Kriger agrees with the magistrate judge as regards parts F. Failure to Exhaust Administrative Remedies and G. Younger Abstention. The majority of Krieger's objections to the remaining parts of the Report and Recommendation are either verbatim recitations or reiterated arguments previously raised in his response to defendants' motions to dismiss. The portions of Krieger's objections that simply reiterate arguments previously advanced are properly construed as general objections to the Report and Recommendation. See Veney, 539 F. Supp. 2d at 844-46. Regardless, the court has conducted a de novo review of each of the parts of the report to which Krieger objects and sets forth its findings below.

4

## A. Section 1983

Krieger objects to the magistrate judge's analysis of his claims as regards 42 U.S.C. § 1983. That section is limited to the VA DSS's potential liability under 42 U.S.C. § 1983. Under § 1983 a plaintiff may plead a cause of action alleging that he was deprived "of a right secured by the Constitution and laws of the United States" by a person acting under color of state law. Adickes v. S. H. Kress, 398 U.S. 144, 150 (1970) (internal quotations omitted). Because 42 U.S.C. § 1983 contains no language abrogating a state's 11th Amendment sovereign immunity, the plaintiff must identify a "person" who violated his rights unless, of course, the state waives its immunity. See Quern v. Jordan, 440 U.S. 332, 340-41 (1979). "[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Mich. Dep't of State Police, 491 U.S. 58, 70 (1989). Likewise, state agencies are not "persons" for the purposes of 42 U.S.C. § 1983. See Weller v. Dept. of Soc. Servs. for City of Baltimore, 901 F.2d 387, 396 (4th Cir. 1990) (citing Will, 491 U.S. at 58). The VA DSS is a state agency of the Commonwealth created in the executive branch and is therefore entitled to 11th Amendment immunity. Va. Code § 63.2-200; Bd. of Sup'rs of Warren County v. Va. Dept. of Soc. Servs., 731 F. Supp. 735, 740 (1990). Thus, because the VA DSS is a state agency and the Commonwealth has not waived its immunity, Krieger cannot maintain a cause of action under 42 U.S.C. § 1983 against the VA DSS.

## B. Eleventh Amendment's Waiver Standard

Krieger objects to the magistrate judge's application of the 11th Amendment's sovereign immunity provision as it pertains to some of Krieger's claims under federal law against the Virginia Department of Social Services. Krieger asserts violations of various federal statutes including the Food Stamp Reauthorization Act, 7 U.S.C. § 2011, the Americans with Disabilities Act, 42 U.S.C. § 12101, the Rehabilitation Act, 29 U.S.C. § 794, the Voting Rights Act, 52 U.S.C. § 10301, the Voting Accessibility for the Elderly and Handicapped Act, 52 U.S.C. § 20101, and the National

5

Voter Registration Act, 52 U.S.C. § 20501. Similar to the 42 U.S.C. § 1983 analysis above, neither the Food Stamp Reauthorization Act, the Voting Rights Act, the Voting Accessibility for the Elderly and Handicapped Act, nor the National Voter Registration Act contain the requisite language abrogating the state's 11th Amendment sovereign immunity. Thus, for the reasons previously stated in section A, Krieger cannot maintain a cause of action against the VA DSS under those four statutes.

### C. Rehabilitation, Americans with Disabilities, and "Motor Voter" Acts[3]

Both the Rehabilitation ("RA"), 29 U.S.C. § 794, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 abrogate the state's 11th Amendment immunity. 29 U.S.C. § 794(d); 42 U.S.C. § 12102. Therefore, VA DSS is not immune from these claims. But Krieger's claims under the RA and ADA fail to state a claim for which relief can be granted.

Generally, in order to recover under either the RA or ADA, a plaintiff must allege "(1) []he has a disability, (2) []he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) []he was excluded from participation in or denied the benefits of such service, program or activity, or otherwise discriminated against, on the basis of [his] disability." Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005). While both the RA and ADA are generally construed together and the analysis under both is similar, the Fourth Circuit has distinguished the causation requirement of each act. Baird ex rel. Baird v. Rose, 192 F.3d 462, 469 (4th Cir. 1999). Thus, in order to state a claim for relief under the RA, a plaintiff must allege "that he was excluded from the . . . benefit due to discrimination *solely* on the basis of his disability." Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1265 (4th Cir. 1995) (emphasis

---

[3] The magistrate judge addressed Title II of the ADA in both Section C and Section E of the Report and Recommendation, and Krieger's objections to those two sections are substantially similar. For clarity purposes, the court will address Krieger's claims under the Rehabilitation Act and the Americans with Disabilities Act together. The Report and Recommendation does not address Krieger's claims under the National Voter Registration Act, also known as the Motor Voter Act. The court will address Krieger's claims under the federal voting statutes in a later section of this opinion.

6

added). In order to state a claim for relief under the ADA, a plaintiff must allege that his disability "was a motivating factor" for excluding him. Baird, 192 F.3d at 470. Krieger's pleadings do not satisfy these causation requirements. Krieger alleges that he has a disability, and he was denied SNAP benefits and the right to vote. Those allegations satisfy the first two prongs identified in Constantine. Krieger's claims under the ADA and RA fail, however, because he does not allege that any of the defendants denied him those benefits on the basis of his disability.

Krieger misinterprets the necessary elements a plaintiff must allege in order to state a claim under either act by making the conclusory statement that "but for" or "because of" his disability the defendants' acts violated the statutes. Pl.'s Obj. Report and Recommendation, Dkt. No. 73, at 6. Rather, a plaintiff must allege that his disability was the basis for the defendants' alleged discriminatory acts. Constantine, 411 F.3d at 498. For example, in Constantine a plaintiff alleged she was unable to complete a law school exam because of her disability. Id. at 499. She also alleged the law school refused to give her extra time to complete the exam, only gave her three days to prepare for a re-examination, refused to change the date due to plaintiff's scheduling conflicts, and determined she would fail the re-examination after she sought a temporary restraining order to prevent the re-examination. Id. Likewise, in Baird, the plaintiff alleged she was prevented from participating in choir after her teacher became aware of her issues with depression. Baird, 192 F.3d at 467. Because the teacher had not enforced an absentee policy prior to learning of the plaintiff's depression, the Baird court concluded there were adequate allegations to suggest that the teacher excluded the plaintiff due to her depression. In this case, there is not a single allegation in the revised amended complaint that gives any indication that Krieger's disability was either a motivating factor or the sole basis for the alleged discriminatory acts. Thus, the court agrees with the magistrate judge that Krieger fails to make out a prima facie case under either the RA or the ADA against any of the defendants. Id.

7

**D. Voting Rights Act**

Krieger alleges he was denied the right to vote in the November 2012 and November 2013 elections in violation of 52 U.S.C. §§ 10101, 20101, and 20501 and voter registration provisions in Virginia's election laws because defendants failed to assist him with registering to vote. The Voting Rights Act, 52 U.S.C. § 10101, does not explicitly abrogate the state's 11th Amendment sovereign immunity, but it does allow a state to be joined as a party defendant if a suit is brought against a state official or subdivision. 52 U.S.C. §10101(c). The United States Court of Appeals for the Sixth Circuit concluded that Congress intended to abrogate sovereign immunity under the Voting Rights Act and properly did so under the Fifteenth Amendment. Mixon v. Ohio, 193 F.3d 389, 398-99 (6th Cir. 1999). Regardless, Krieger fails to state a claim for relief against any of the defendants.

**1.**

The magistrate judge correctly analyzed Krieger's claim as to 52 U.S.C. § 10101. Despite Krieger's objection that the disabled are minorities protected by the Voting Rights Act, the plain language of 52 U.S.C. § 10101 expressly limits its application to discrimination based on "race, color, or previous condition of servitude" and discrimination against "language minorities." 52 U.S.C. § 10101(a)(1); 52 U.S.C. § 10503. Krieger's allegations do not bring him under the plain language of the Act, and, therefore, Krieger does not have a claim under the Voting Rights Act.

**2.**

The magistrate judge did not address Krieger's claims under the Voting Accessibility for the Elderly and Handicapped Act ("VAEHA"), 52 U.S.C. § 20101, or the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501. The VAEHA and the NVRA both provide a private cause of action and equitable relief for alleged infringements of the right to vote during federal elections. 52 U.S.C. §§ 20101, 20501(b)(1). Neither the VAEHA, the NVRA nor the Voting Rights Act provides a private cause of action for damages. The November 2013 election did not involve the election for

8

any federal office; therefore, these acts do not apply to Krieger's alleged denial of the right to vote in the November 2013 election. The November 2012 election, however, did include elections for federal office. Therefore, the court will address Krieger's claims under both acts as to that election.

a.

Enforcement of the VAEHA is governed by 52 U.S.C. § 20105. Nothing in the VAEHA is meant to abrogate any rights guaranteed by the Voting Rights Act. 52 U.S.C. § 20106. The VAEHA provides a private right of action for declaratory or injunctive relief "[i]f a State or political subdivision does not comply" with the Act. 52 U.S.C. § 2105(a). Notably, the plain language of the Act only requires a state to provide *accessible permanent registration facilities* unless the state provides opportunities to register by mail or at a residence. 52 U.S.C. § 2103. The Act does not require a state to provide assistance with a mailed voter registration application. Nevertheless, before a plaintiff may bring a cause of action in federal court, the plaintiff must give notice of the noncompliance to the "chief election officer of the State" and wait forty-five days after the date of notification. 52 U.S.C. § 2105(b). Nowhere in Krieger's complaint or revised amended complaint does he allege that he gave notice to the chief election official. Krieger alleges he sent e-mails to Doyle about his voter registration. Am. Compl., Dkt. No. 36, at 3. Krieger also raised the issue of his voter registration with the Department of Social Services Appeals and Fair Hearings Unit. Dkt. No. 65-1, at 2. Krieger does not allege that he gave any notice to the "chief election officer" before filing suit. Because Krieger does not allege that he complied with the mandatory provision of 52 U.S.C. § 20105(b) and the VAEHA does not require states to provide assistance with mailed voter registration applications, his claim under the VAEHA fails.

b.

Enforcement of the NVRA is governed by 52 U.S.C. § 20510. Nothing in the NVRA is meant to abrogate any rights guaranteed by the Voting Rights Act. 52 U.S.C. § 20510(d)(2). The

9

NVRA requires "voter registration agencies" to assist applicants with their voter registrations unless the applicant declines assistance. 52 U.S.C. § 20506(a)(4)(a)(ii). A "voter registration agency" is any office that provides public assistance or provides services to persons with disabilities. 52 U.S.C. § 20506(a)(2). The NVRA also provides a private right of action for declaratory or injunctive relief to any person "aggrieved by a violation of" the Act. 52 U.S.C. § 20510(b)(1). Unlike the VAEHA, under the NVRA an aggrieved person "may" provide notice to the chief election official before filing suit. Id.[4] Indeed, if the alleged violation occurs within thirty days of an election, the plaintiff may immediately file suit in federal court for declaratory or injunctive relief. 52 U.S.C. § 20510(b)(3). As noted above, Krieger does not allege he gave any notice to the chief election official.

Krieger alleges he was denied the right to vote in the November 2012 election because defendants did not assist him with his voter registration. He does not allege the defendants have declined to register him to vote for the upcoming November 2014 election. Furthermore, there is no indication—nor does Krieger allege—that any of the defendants will prevent him from registering to vote in the future. The court cannot conceive how declaratory or injunctive relief under 52 U.S.C. § 20510 can be a remedy for Krieger's inability to vote in the November 2012 election.

Injunctions are, by their nature, forward looking remedies meant to "forestall future violations." United States v. Oregon State Medical Soc., 343 U.S. 326, 333 (1952). With no allegations in the complaint or any indication otherwise of the potential for future abuse by the defendants, an injunction is not proper. Id. Declaratory relief, however, "may be appropriate where . . . there is no showing of a likelihood of imminent or future harm or of the irreparable nature of

---

[4] Other courts have read § 20510(b)(1) in conjunction with § 20510(b)(2) for the premise that the NVRA does require notice before bringing suit unless the violation occurs within thirty days of an election. See Georgia State Conference of NAACP v. Kemp, 841 F. Supp. 2d 1320, 1335 (N.D. Ga. 2012) (citing Broyles v. Texas, 618 F. Supp. 2d 661, 692 (S.D. Tex. 2009)).

10

the threatened injury." Halkin v. Helms, 690 F.2d 977, 1007 (D.C. Cir. 1982). But Krieger does not allege that his rights "continue to be burdened or are likely to be burdened in the future." Walden v. Centers for Disease Control and Prevention, 669 F.3d 1277, 1284 (11th Cir. 2012). Therefore, a declaration by the court that defendants' violated Krieger's right to vote "'would be nothing more than a gratuitous comment without any force or effect.'" Id. (quoting Malowney v. Fed. Collection Dep. Grp., 193 F.3d 1342, 1346 (11th Cir. 1999)); see also Davis v. County of Amherst, No. 6:07cv00017, 2008 WL 591253, at *2-3 (W.D. Va. Mar. 3, 2008). Therefore, Krieger's NVRA claim fails to satisfy the "case or controversy" requirement of Article III of the United States Constitution and the "actual controversy" requirement of the Declaratory Judgment Act, 28 U.S.C. § 2201. Without an injury that the court can remedy, Krieger's objection is overruled and his NVRA claim must be dismissed.

### c.

To the extent that Krieger attempts to construe his denial of the right to vote as a violation of the Americans with Disabilities Act or the Rehabilitation Act, the court agrees with the magistrate judge's analysis. A plaintiff must allege that the defendants' alleged discriminatory acts were either motivated by his disability or solely based on his disability. See Baird, 192 F.3d at 470; Doe, 50 F.3d at 1265. There are simply no allegations in the revised amended complaint that claim the defendants discriminated against Krieger on the basis of his disability. Therefore, Krieger fails to make out a prima facie case of voting discrimination due to his disability. Constantine, 411 F.3d at 498.

### E. Personal Capacity Liability

Krieger objects to the magistrate judge's recommendation to dismiss the claims against Doyle. The magistrate judge, relying on Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985), found no allegations that Doyle acted *personally* in the alleged deprivation of Krieger's rights. Report and Recommendation, Dkt. No. 72, at 17. Rather, the magistrate judge read the complaint to only

11

contain allegations of Doyle's actions in her *official* capacity as an employee of Loudon DSS. Id. Krieger directs the court to the factors found in Biggs v. Meadows, 66 F.3d 56 (4th Cir. 1995), for determining whether a defendant is sued in her personal capacity, but the Biggs analysis is unnecessary here. The Biggs analysis applies when a plaintiff fails to specifically allege in what capacity he is suing a defendant. Biggs, 66 F.3d at 61.[5] Here, in Count IV of the revised amended complaint, Krieger specifically alleges Doyle's actions were under color of state law and subject her to personal liability. "'[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.'" Haver v. Melo, 502 U.S. 21, 25 (1991) (quoting Kentucky v. Graham, 473 U.S. 159, 166 (1985)). Thus, the court rejects that portion of the Report and Recommendation that concludes that Krieger's complaint fails to allege a claim against Doyle in her personal capacity.

But simply alleging a claim against Doyle in her personal capacity does not end the inquiry as the court must consider the issue of qualified immunity. "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 236 (2009) (quoting Harlow v. Fitgerald, 457 U.S. 800, 818 (1982)).

Qualified immunity analysis requires the court to ascertain (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right[;]" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 236 (2009) (quoting Saucier v. Katz, 533 U.S. 194, 201-02 (2001)). The court may address either prong first "in light of the circumstances of the particular case at hand." Pearson, 555 U.S. at 236. A right is "clearly established" if a "reasonable official would understand

---

[5] The Biggs factors are instructive, however, because even if Krieger didn't specifically allege Doyle's acts were "under color of state law [and] give rise to her personal liability," he does not allege there is any official policy or custom, he seeks compensatory damages along with his request for injunctive and declaratory relief, and Doyle has asserted a qualified immunity defense. See Biggs, 66 F.3d at 61; Victors v. Kronmiller, 553 F. Supp. 2d. 533, 545 (D. Md. 2008).

12

that what [s]he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotation marks omitted). The court's analysis focuses not on "the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992) (citing Anderson v. Creighton, 483 U.S. 635, 639-40 (1987)).

Here, Krieger alleges that Doyle did not send him a voter registration application and did not respond to his requests about the application. Looking at the specific conduct alleged in this case, and finding no relevant case law in the Fourth Circuit or outside the circuit, the court cannot say that a reasonable person would understand that failing to mail a voter registration application would amount to a violation of Krieger's constitutional rights. See Meyers v. Baltimore Cnty., Md., 713 F.3d 723, 731 (4th Cir. 2013) (qualified immunity applies where reasonable person in defendant's position would fail to understand his conduct violated constitutional rights). Furthermore, while not sanctioning Doyle's alleged conduct, any inquiries about the status of Krieger's voter registration should have been directed to the local registrar who receives an updated list of registered voters on a weekly basis sixty days prior to an election. See Va. Code § 24.2-444. Finally, "if there is a 'legitimate question' as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity." Wiley v. Doory, 14 F.3d 993, 995 (4th Cir. 1994) (Powell, J.); Reeves Bros., Inc. v. U.S. E.P.A., 956 F. Supp. 665, 671-72 (W.D. Va. 1995) (citing Wiley, 14 F.3d at 995). Therefore, Doyle is entitled to qualified immunity.

### F. Supplemental Jurisdiction

Finally, Krieger objects to the magistrate judge's recommendation to dismiss his state law claims along with his federal claims. His objection is overruled. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they

13

form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Supplemental jurisdiction is discretionary, and a district court may decline to exercise this jurisdiction if it "has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(2). Because Krieger fails to state a claim over which this court has original jurisdiction, the court will exercise its discretion to dismiss Krieger's state law claims as well.

## IV.

For these reasons, Krieger has failed to state a claim on which relief can be granted, and the court will not grant him leave to amend. As such, an Order will be entered adopting the Report and Recommendation in part, rejecting it in part, and dismissing this action with prejudice.

The clerk is directed to send a copy of this Memorandum Opinion to the pro se plaintiff and to all counsel of record.

Entered: September 30, 2014

*Michael F. Urbanski*

Michael F. Urbanski
United States District Judge